COMMONWEALTH LAND TITLE INSURANCE COMPANY, Appellee,

v.

DAVIS et al., Appellants.

[Cite as *Commonwealth Land Title Ins. Co. v. Davis* (1989), 63 Ohio App.3d 521.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–646.

Decided July 25, 1989.

*Hamilton, Kramer, Myers & Cheek* and *Austin P. Wildman,* for appellee.

*M. Keith Dobbs* and *Joseph H. Hans,* for appellants.

*Strip, Fargo, Schulman & Hoppers* and *John W. Hoppers,* receiver.

*Per Curiam.*

This is an appeal from a judgment of the Franklin County Court of Common Pleas.

Plaintiff filed a complaint on April 10, 1989 for an accounting, declaratory and injunctive relief, negligence, breach of contract, fraud, conversion and constructive trust against defendants. The complaint was personally served on Cliff Davis, along with an order appointing John W. Hoppers as receiver for defendant Investors Closing Agency ("Investors"), an agent for plaintiff, for the issuance of insurance. Defendants were enjoined from releasing any funds, removing any documents or other items, and were instructed to deliver to the receiver any material in their possession belonging to Investors.

The same day, by order of the court, the receiver, plaintiff's attorney, a locksmith, and a member of the Franklin County Sheriff's Department visited the Investors offices, which were vacant. The records and equipment had been removed. The order, enjoining Investors from removing any records, documents or other items, was posted on the door.

The receiver was present at the April 13, 1989 deposition of a former employee of Investors, which deposition was also attended by Keith Dobbs, attorney for defendants. The receiver indicated that he intended to extend the receivership to include C & C Investments and Triad Realty. A supplemental order was filed on April 14, 1989 including these entities. The receivership was extended to include Zar Enterprises on April 20, 1989, after finding records that Zar was included in various transactions.

The receiver mailed a copy of the court's April 14, 1989 order to Dobbs. On April 19, 1989, Dobbs replied by letter stating that defendants denied taking or receiving the material at issue. On May 9, 1989, Dobbs filed an answer to the amended complaint of April 14, 1989; on May 10, 1989, the receiver filed a

motion to show cause, along with an entry. The contempt hearing was held on May 25, 1989. The court held defendants in contempt and ordered them to serve thirty days in the Franklin County Jail. The court gave them until May 30, 1989 to purge themselves of contempt. On May 31, 1989, the court entered an order finding that defendants had failed to purge themselves of contempt and imposed the sentence effective June 1, 1989.

Thereafter, the trial court overruled defendants' motion for a stay order. This court granted a stay conditioned upon posting a bond, and expedited the appeal.

Defendants advance the following assignments of error:

"I. The trial court's findings are against the manifest weight of the evidence.

"II. The trial court erred in finding that appellants had been properly served with the expanded order.

"III. The trial court erred in finding that the appellants' assertion of Fifth Amendment privileges did not apply to the case at bar.

"IV. The motion which charged appellants with contempt was fatally defective and denied appellants due process of law."

Defendants contend in the first assignment of error that the trial court's finding of contempt was against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, provides in the syllabus:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

A court may make a finding of civil contempt upon clear and convincing evidence. See *ConTex, Inc. v. Consolidated Technologies, Inc.* (1988), 40 Ohio App.3d 94, 95, 531 N.E.2d 1353, 1355 (citing *Brown v. Executive 200, Inc.* [1980], 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610). Thus, we cannot reverse the order of the trial court if the court had before it competent and credible evidence " * * * to support its findings of contempt by clear and convincing evidence. * * * " *ConTex, Inc., supra,* 40 Ohio App.3d at 97, 531 N.E.2d at 1357.

The trial court met this standard. Defendants have not yet complied with the court orders since they have not delivered to the receiver the documents and equipment removed from the offices located at 733 East Dublin–Granville Road. The court could have inferred that defendants possessed such materials from the testimony of the two witnesses who saw defendants removing

materials from the building in which the above-mentioned entities were located. The evidence was sufficient to support a finding of contempt.

Thus, defendants' first assignment of error is not well taken.

■ In the second assignment of error, defendants contend that they were not properly served with the April 14, 1989 order. Plaintiff maintains that it complied with Civ.R. 5(B) on April 17, 1989 by serving attorney Keith Dobbs with a copy of the order. Defendants are correct insofar as Dobbs was not the attorney of record for purposes of Civ.R. 5(B) on April 17, 1989. Nevertheless, the record indicates that, at the latest, Dobbs was defendants' attorney of record on May 9, 1989 when he filed an answer to the complaint for them. Arguably, however, Dobbs was subject to service on behalf of defendants prior to that time and as early as April 13, 1989, given his actions on behalf of defendants, and in particular his appearance on their behalf at deposition and his response on their behalf to correspondence from the receiver.

Even if the foregoing circumstances do not include proper service, defendants were served with the order as of May 25, 1989 at the hearing. The dispositive issue then is whether the record suggests that defendants had insufficient time to comply with that order. It is noteworthy that defendants made no request for a postponement of the hearing on the basis of lack of notice of the April 14 order, nor was it asserted that such prior lack of notice prejudiced defendants' ability to testify or to comply. Defendants have not asserted that more time was necessary to comply with the April 14 order. Rather, defendants' counsel stated that defendants would return records and equipment if they had them.

Thus, it is apparent that another hearing would have been futile and would not have served any purpose. Even after receiving notice of the April 14 order in open court, defendants had the opportunity to return the records and equipment by May 30, 1989, but failed to do so. Consequently, any error committed by the trial court in finding that defendants had been properly served with the April 14 order prior to the hearing was not prejudicial.

Defendants' second assignment of error is not well taken.

■ In the third assignment of error, defendants maintain that the trial court erred in finding that the Fifth Amendment privilege against self-incrimination was not available to defendants, citing *Bellis v. United States* (1974), 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678. The United States Supreme Court in *Bellis* recognized that the Fifth Amendment privilege does not apply to business records of a corporation, partnership, or other collective entities. The receiver's order of April 14, herein, sought the turnover of the records

and equipment removed from the offices at 733 East Dublin–Granville Road. The court in *Bellis* stated:

"It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony. * * * [This] privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life. * * * " *Id.,* 417 U.S. at 86, 94 S.Ct. at 2182, 40 L.Ed.2d at 683.

Further, the court stated:

"On the other hand, an equally long line of cases has established that an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally. * * * " *Id.,* 417 U.S. at 88, 94 S.Ct. at 2183, 40 L.Ed.2d at 683.

See, also, *Fisher v. United States* (1976), 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39. (At issue was whether a summons directing an attorney to produce documents delivered to him by his client in connection with the attorney-client relationship was enforceable over claims that the documents were constitutionally immune from summons in the hands of the client and retained that immunity in the hands of the attorney.)

The Fifth Amendment privilege protects an accused only from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature. Defendants cannot avoid compliance with the court orders by asserting that the documents, records, and equipment may tend to be self-incriminating. The Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination. See *Fisher, supra,* at 396, 96 S.Ct. at 1573, 48 L.Ed.2d at 47.

The issue is whether the act of producing the documents warrants assertion of the Fifth Amendment privilege by defendants. In this case, defendants did not claim the court orders would force them to restate, repeat or affirm the truth of the contents in the records. Moreover, there have been no assertions that the documents are both testimonial and incriminating for purposes of applying the Fifth Amendment privilege, nor is there any indication that the records contain testimonial communications or are incriminating. The mere assertion that the documents are incriminating is insufficient.

Defendants deny having the documents. Admitting the existence and possession of the papers is not testimony within the protection of the Fifth Amendment privilege. Defendants did not advise the court as to how the business records were personal papers or testimonial in nature, nor was it

alleged that such documents did not belong to the collective entities. Defendants cannot merely stand on the fact that, if they are in possession or know the whereabouts of the records, the papers or records on their face might incriminate them. The question is not one of testimony but one of surrendering the documents to the receiver. Hence, the trial court did not err in finding that the defendants could not invoke the Fifth Amendment privilege.

Defendants' third assignment of error is not well taken.

■ In the fourth assignment of error, defendants maintain that the motion charging them with contempt was fatally defective and denied them due process of law. Defendants essentially claim that, because the dates set forth in the affidavits were incorrect, they were denied due process of law. As to Mr. Sauer's affidavit, the receiver testified that an amended affidavit was filed the following day on May 11, 1989. Therefore, the error was corrected well in advance of the hearing held on May 25, 1989. Further, although the incident to which Ms. Evelyn Fell testified occurred on April 13, 1989 and not on April 20, 1989, as set forth in her affidavit, this was not shown to be prejudicial to defendants. On cross-examination, defendants had a reasonable opportunity to cross-examine her as to the incorrect date set forth in her affidavit. There has been no prejudicial error demonstrated by defendants.

Defendants' fourth assignment of error is not well taken.

For the foregoing reasons, defendants' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, YOUNG and BRYANT, JJ., concur.