JOURNAL ENTRY and OPINION
{¶ 1} Ronald J. Cherwin, Jr. ("father") appeals the domestic relations court's order, which increased his child support obligation, terminated the shared parenting plan, found him in contempt for failure to pay his share of orthodontia and eyeglass expenses, and awarded the mother attorney fees. Cherwin assigns six errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part and reverse and remand in part the trial court's decision. The apposite facts follow.
 {¶ 3} On October 7, 1997, the parties were divorced pursuant to an agreed judgment entry. The parties entered into a shared parenting plan regarding their minor son (d.o.b. 10-19-86). According to the terms of the plan, the child was to reside primarily with his mother, Kim Cherwin.
 {¶ 4} The father was obligated, pursuant to the agreed judgment entry, to pay child support in the amount of $465 per month plus costs. This amount deviated from the calculated worksheet amount of $510.37, because of the shared parenting arrangement.
 {¶ 5} It was further agreed the father would provide health insurance for the minor child, and would pay 75% of the uncovered medical expenses, including those related to hospitalization, optical, pharmaceutical, orthodontic, and psychological needs of the child beyond the first $100 per year.
 {¶ 6} On June 25, 2002, the mother filed several motions. She requested the termination of the shared parenting plan; requested an increase of the father's child support obligation based on a change in the needs of the child and the father's ability to pay; requested the father show cause why he failed to comply with his obligation to pay the expenses for the child's orthodontia and eyeglasses; and requested attorney fees.
 {¶ 7} The father filed a motion to show cause in which he argued the mother violated the shared parenting agreement by failing to abide by the shared parenting visitation schedule and failing to advise him of the child's grades and dates of parent/teacher conferences.
 {¶ 8} On December 5, 2002, a hearing regarding these motions was conducted before a magistrate. On May 21, 2003, the magistrate issued its report, wherein it terminated the shared parenting plan, increased the father's child support obligation to $538.70 per month, and ordered the father to pay the mother's attorney fees in the amount of $3,964.50. The magistrate also found the father was in contempt for failing to pay his portion of the child's uninsured expenses for eyeglasses and orthodontia. The father could purge the contempt by paying $1,729.78 within 30 days of the judgment entry.
 {¶ 9} The father filed timely objections to the magistrate's report. On May 28, 2004, the trial court overruled the objections and adopted the magistrate's report. The father now appeals.
 {¶ 10} In his first assigned error, the father argues the trial court erred by finding him in contempt for failing to pay 75% of the uninsured orthodontia and eyeglasses expenses.
 {¶ 11} "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's orders."[2] Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere legal preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established."[3] A reviewing court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion.[4]
 {¶ 12} We conclude the trial court did not abuse its discretion in finding the father was in contempt for failing to pay his portion of the orthodontia bill. The agreed judgment entry obligates the father to pay 75% of the uncovered medical expenses. The mother informed the father that she would pay the unreimbursed orthodontia expenses; however, it appears it was because the father opposed the son getting braces. The father contended the braces were were not medically necessary; however, the photographs of the son taken prior to his getting braces reveals he had a large overbite. The mother also testified the child was relentlessly teased by other children because of the appearance of his teeth.
 {¶ 13} Additionally, the shared parenting agreement stated that if there was a disagreement about medical care of the child, the father could obtain a second opinion. The father failed to exercise this option. The shared parenting agreement also stated in the event of a disagreement, the mother's "reasonable" opinion would prevail. Given the evidence, we cannot say the mother's decision to get braces for the son was unreasonable.
 {¶ 14} The father was also obligated to pay for the braces by virtue of the financial agreement and promissory note he entered into with the orthodontist. This agreement set out the total amount due and also estimated the amount that would be covered by insurance. Therefore, the father was aware of the amount of the uncovered expenses, yet signed the agreement anyway.
 {¶ 15} Although the father contends the trial court should have deducted $100 for each year of the orthodontist bill because the mother was obligated to pay the first $100 of every year of unreimbursed medical expanses, we disagree. The orthodontist's bill was incurred as a lump sum. The mother also testified that she incurred well beyond $100 in annual medical expenses for the child, for which she has not requested reimbursement. Therefore, we conclude the trial court did not err by failing to deduct the annual $100 amount from the bill.
 {¶ 16} We conclude, however, the trial court abused its discretion by finding the father in contempt for failure to pay his portion of the expenses for the child's eyeglasses. The father contended at trial that the mother never asked for reimbursement and never sent him the bill. The mother conceded she never requested payment. The court in Rogers v.Rogers[5] addressed a similar situation and concluded:
"[T]he duty to pay cannot be triggered without communication regardingthe fact that the bills have been incurred, the amount of the bills, andthe amount of the bills not covered by insurance. Clearly, the obligorspouse must have sufficient information concerning the existence andextent of his obligation before he can be in contempt for failing to paythat obligation."[6]
 {¶ 17} In the instant case, the expenses for the eyeglasses were incurred in 1998, 2000 and 2001. The mother never showed the father these bills nor requested payment. The mother cannot contend the father violated the order when she failed to provide him with the information he needed to comply. Accordingly, we find the trial court abused its discretion by finding the father in contempt for failure to pay for the eyeglasses. The father's first assigned error is overruled in part and sustained in part.
 {¶ 18} In his second assigned error, the father argues the trial court erred by prohibiting him from introducing into evidence a copy of a fourth check, which was issued by his insurance company to to cover the orthodontia expenses.
 {¶ 19} The decision to admit or exclude evidence at trial is a matter which lies within the sound discretion of the trial court, whose judgment will not be disturbed unless it is unreasonable, arbitrary or unconscionable.[7] We do not find the trial court abused its discretion by not permitting the fourth check to be introduced.
The mother's counsel requested at the father's deposition and at trial, that he produce the insurance checks issued to cover the orthodontia expenses. In response to these requests, the father produced three checks. The mother acknowledged on cross examination that only three checks were issued by the insurance company. In an attempt to impeach the mother, the father's counsel then presented a fourth check that was issued by the insurance company.
 {¶ 20} The trial court concluded that under these circumstances, producing the fourth check on cross-examination was highly prejudicial. In essence, it appeared the fourth check was purposely not disclosed earlier as means to impeach the mother later. We agree that such abuse of the discovery rules should not be permitted.
 {¶ 21} Additionally, the father never proffered the check into evidence. Therefore, he has waived his right to argue this evidentiary issue on appeal.[8] Accordingly, the father's second assigned error is overruled.
 {¶ 22} In his third assigned error, the father argues the trial court abused its discretion by modifying the father's child support obligation without using proper documentation and when the circumstances did not support a modification.
 {¶ 23} A trial court possesses broad discretion when modifying child support orders, and "the finding as to whether there has been a change in circumstances that, ultimately, warrants a modification or termination will not be reversed absent an abuse of discretion."[9] An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.[10] When a party seeks modification of an existing child support order, the trial court is to recalculate the support using the appropriate child support calculation worksheet and schedule.[11]
 {¶ 24} We find there was sufficient evidence of a change in circumstances to warrant the modification. A change of circumstances is found if the recalculated amount is more or less than ten percent of the existing obligation.[12] In the instant case, the father was originally ordered to pay $465 per month plus costs. This amount was a deviation from the calculated child support worksheet amount of $510.37, because of the shared parenting plan. Because the trial court terminated the plan, this amount was no longer equitable. Under the newly calculated worksheet, using the father's current salary, the amount he is obligated to pay is $538.70. This is more than ten percent of the amount he was obligated to pay under the shared parenting plan. Therefore, the trial court correctly ordered the modification.
 {¶ 25} However, we agree with the father that the magistrate should have used a more current tax return for the mother's income. The mother admitted that she was receiving more for her social security disability income than she made in 2001. However, she failed to submit a 2002 tax return and claimed she did not know how much more she received. The trial court used the social security disability income amount delineated on the mother's 2001 tax return for the mother's income, but used the father's 2002 paycheck stubs to calculate his income. We find this to be inequitable, especially because the mother admitted she received more in disability payments more in disability payments in 2002 then she did in 2001. Accordingly, we sustain the father's third assigned error in part and reverse and remand for a recalculation of the child support worksheet, using the mother's income from 2002.
 {¶ 26} In his fourth assigned error, the father argues the trial court erred by terminating the shared parenting plan without specifically stating the grounds for the termination. We disagree.
 {¶ 27} When reviewing a trial court's determination to modify custody, its decision is subject to reversal only upon a showing that the trial court abused its discretion.[13] R.C. 3109.04(E)(2)(c), permits a court to terminate a shared parenting plan, which was previously generated by the consensus of both parties, upon the request of either parent or "whenever it determines that shared parenting is not in the best interest of the child."
 {¶ 28} In the instant case, the mother requested termination of the shared parenting plan because her son, who was sixteen years old at the time, no longer desired to stay overnight with his father. The magistrate conducted an in-camera interview with the child regarding the issue. The magistrate concluded in its report:
"After consideration of the factors contained in O.R.C. 3109.04(F)(1)and (2), including the wishes and concerns of the minor child, theMagistrate finds that shared parenting is no longer in the best interestof the minor child, and that Plaintiff should be designated residentialparent and legal legal custodian of the minor child * * *."[14]
 {¶ 29} Therefore, the court made the requisite finding that the shared parenting plan was no longer in the best interest of the child. Although the father contends the trial court erred by not setting forth which factors under RC. 3109.04(F)(1) and (2) the trial court found relevant in terminating the plan, there is no such obligation on the trial court to do so.[15] Moreover, the evidence at trial indicated the child and his father have not fostered a close relationship and that the child no longer wishes to abide by the shared parenting plan's strict custody schedule. The mother testified that the child, whom she considered to be a young man, was old enough to choose with whom he wished to be and had other social obligations, including a job, that made his life less structured. Therefore, there was sufficient evidence on the record to support the trial court's decision to terminate the shared parenting plan. Accordingly, the father's fourth assigned error is overruled.
 {¶ 30} In his fifth assigned error, the father argues the trial court erred by finding the mother was not in contempt for failing to abide by the interim visitation order. He also contends the mother constantly ignored the visitation schedule in the shared parenting plan, failed to send him a copy of the child's report cards, cards, and failed to notify him of the dates for parent/teacher conferences.
 {¶ 31} Regarding the son's reluctance to visit the father, we do not find the trial court abused its discretion by refusing to find the mother was in contempt. As the court in Smith v. Smith[16] held,
"Age must be a central consideration in determining when a minor'sreluctance in visiting with the noncustodial parent is enough to preventvisitation. * * * Nevertheless, this court has never failed to protectthe noncustodial parent's right to visitation, in the absence of proofthat the children, affirmatively and independently, do not wish to haveany visitation."[17]
 {¶ 32} In the instant case, the child is sixteen years old. The mother testified she encouraged him to see his father, has offered to drive him to and from the father's house, and desires that the son have a relationship with his father. In spite of this, the son refuses to visit with his father. We do not find any error in the trial court's refusal to find the mother in contempt, where the child is sixteen years old and appears to have independently made a decision not to visit with his father.
 {¶ 33} Regarding the mother's failure to send the father a copy of the child's records or to notify him of the date of parent/teacher conferences, the father admitted that he has never attempted to contact the school himself to obtain this information. He has also never requested this information from the mother. The shared parenting plan places the burden on both parties to obtain information from the school. Therefore, the trial court did not err by refusing to find the mother was in contempt for failing to provide information that the father could have obtained himself. Accordingly, the father's fifth assigned error is overruled.
 {¶ 34} In his sixth assigned error, the father argues the trial court erred by ordering him to pay the entire amount of the mother's attorney fees. We agree.
 {¶ 35} The attorney's itemization fails to detail which fees were attributable to the contempt motion, and which were for the other motions. The mother is entitled to some fees for the work the attorney performed on the contempt motion. Ohio courts have long held that a trial court has discretion to award reasonable attorney fees against a party found guilty of civil contempt.[18] It would be unfair to require the mother to expend her own funds to enforce the separation agreement, when the father wilfully failed to comply.[19]
 {¶ 36} The court, however, did not make the requisite findings for awarding the fees incurred for the motions to terminate the shared parenting agreement and to modify the child support obligation. R.C.3105.18(H) provides:
"In divorce or legal separation proceedings, the court may awardreasonable attorney's fees to either party at any stage of theproceedings, including, but not limited to, any appeal, any proceedingarising from a motion to modify a prior order or decree, and anyproceeding to enforce a prior order or decree, if it determines that theother party has the ability to pay the attorney's fees that the courtawards. When the court determines whether to award reasonable attorney'sfees to any party pursuant to this division, it shall determine whethereither party will be prevented from fully litigating that party's rightsand adequately protecting that party's interests if it does not awardreasonable attorney's fees."
 {¶ 37} Therefore, R.C. 3105.18(H) directs the court to consider whether the party has the ability to pay the attorney fees. The trial court in the instant case made no finding as to the father's ability to pay the fees. This is not required when awarding fees incurred for bringing a contempt motion but is required for other motions.[20]
 {¶ 38} Moreover, there was no indication that the failure to award the fees would prevent the mother from being able to litigate her rights or protect her interests. Although the mother is disabled and receives only social security disability as income, she is she is remarried and her new spouse earns almost as much as the father. The evidence also indicates she has paid $2,575 of her fees thus far.
 {¶ 39} Therefore, we conclude the trial court erred by awarding the full amount of the fees because the record does not support such an award. Accordingly, the father's sixth assigned error is sustained; we remand the matter for the trial court to recalculate the amount of attorney fees to reflect the amount incurred for bringing the contempt motion.
Judgment affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.
This cause is affirmed in part and reversed in part and remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Calabrese, Jr., J., Concur.
 APPENDIX Assignments of Error {¶ 40} "I. The trial magistrate abused his discretion in findingappellant in contempt of court for nonpayment of orthodontic and eyeglassexpenses."
 {¶ 41} "II. The trial court abused its discretion in grantingplaintiff's motion to exclude evidence of an insurance payment toward theorthodontia."
 {¶ 42} "III. The court abused its discretion in modifying appellant'schild support obligation without proper documentation."
 {¶ 43} "IV. The trial court erred in terminating the shared parentingplan."
 {¶ 44} "V. The magistrate erred in failing to find appellee incontempt of court."
 {¶ 45} "VI. The magistrate erred in awarding appellee any partof her attorney fees."
[1] See Appendix.
[2] Moraine v. Steger Motors, Inc. (1996), 111 Ohio App.3d 265, 268, citing ConTex, Inc. v. Consolidated Tech., Inc. (1988),40 Ohio App.3d 94.
[3] Ohio State Bar Assn. v. Reid (1999), 85 Ohio St.3d 327, 331.
[4] State, ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11.
[5] (Apr. 10, 2000), 12th Dist. No. C.A. Case No. 99 09 155.
[6] Id.
[7] Felden v. Ashland Chem. Co. (1993), 91 Ohio App.3d 48, 59;Shimola v. Cleveland (1992), 89 Ohio App.3d 505, 511; Zender v.Daimler/Chrysler Motors Corp. (Nov. 2000), Cuyahoga App. No. 77814.
[8] Garrett v. City of Sandusky, 68 Ohio St.3d 139, 1994-Ohio-485.
[9] Mottice v. Mottice (1997), 118 Ohio App.3d 731, 735.
[10] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[11] R.C. 3119.79(A).
[12] Id.
[13] Masters v. Masters (1994), 69 Ohio St.3d 83, 85.
[14] Magistrate's Report at page 2.
[15] Matis v. Matis, 9th Dist. No. 04CA0025-M, 2005-Ohio-72.
[16] (1980), 70 Ohio App.2d 87.
[17] Id. at 88-90.
[18] State ex rel. Fraternal Order of Police v. Dayton (1977),49 Ohio St.2d 219, 230-31; Marx v. Marx, Cuyahoga App. No. 82021,2003-Ohio-353; Villa v. Villa (May 14, 1998), Cuyahoga App. No. 72709.
[19] Villa v. Villa, supra.
[20] Id.